**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

LISA J. MCCOMBS,

      Plaintiffs,

vs.                            CASE NO.: 1:16cv386HSO-JCG

AMERICAN AIRLINES, INC., ENVOY
AIR, INC., and JOHN AND JANE DOE A,
B, C, D, E, F, AND G,

      Defendant.

_____ /

**DEFENDANTS AMERICAN AIRLINES, INC., ENVOY AIR, INC., JOHN DOE AND
JANE DOE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

Defendants American Airlines, Inc., Envoy Air, Inc., John Doe and Jane Doe
(collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby file
their Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended
Complaint with prejudice and in support thereof state:

**I.     INTRODUCTION**

Plaintiff's Second Amended Complaint again fails to state a claim for relief as a matter of
law, requiring its dismissal in its entirety with prejudice. Plaintiff seeks damages arising out of a
series of incidents at the Manhattan Regional Airport in Kansas. Plaintiff claims that she, along
with her "Service Animal" Jake, were improperly denied boarding on Defendants' flights.

All counts, with the exception of one premised on the Americans with Disabilities Act,
attempt to sue Defendants for a violation of the Air Carrier Access Act. Significantly, the Air
Carrier Access Act does not create a private right of action. Plaintiff cannot masquerade her
claims, which sue for a violation of this statute, as common-law tort claims. In addition, the Air

Carrier Access Act's pervasive regulatory scheme preempts Plaintiff's state-law claims, further requiring their dismissal.

With regard to Plaintiff's allegations under the Americans with Disabilities Act, this Count must also be dismissed with prejudice as Title II of the Act does not apply to Defendants as private corporations, while Title III does not apply to airlines or air travel and the term "travel services" refers to a physical, travel agency, which Defendants are not. Moreover, airlines, such as Defendants, are covered by Americans with Disabilities Act's predecessor anti-discrimination statute-- the Air Carrier Access Act. Accordingly, all of Plaintiff's causes of action should be dismissed.

## II.     THE SECOND AMENDED COMPLAINT

Plaintiff's nine-count Second Amended Complaint alleges causes of action for negligence (Count 1), negligent supervision (Count 2), negligent and/or intentional infliction of emotional distress (Count 3), breach of contract/bad faith/breach of the duty of good faith and fair dealing (Count 4), fraud/fraudulent inducement/fraudulent misrepresentation (Count 5), violation of Title II and/or Title III of the Americans with Disabilities Act (Count 6), Pattern and Practice/Systematic Reckless Disregard and Failure to Train (Count 7), Respondeat Superior (Count 8), and Joint Venture, Co-Partnership, Co-Principals (Count 9). In these counts, Plaintiff claims that Defendants breached the contract of carriage and violated a duty created under the Air Carrier Access Act when they denied her boarding with her dog, which she alleges is a "Service Animal" rather than an "Emotional Support Animal," on an October 25, 2015 flight and then again on October 26, 2015. The specific allegations of each individual count along with the basis for dismissal of each count are addressed in Section III below.

## III.    LEGAL ARGUMENT

### a.   Motions to Dismiss Under Rule 12(b)(6)

When analyzing a motion to dismiss filed pursuant to Rule 12(b)(6), the court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *See Hennington v. American Express Co*., No. 3:09cv569-DPJ-FKB, 2010 WL 1329003 (S.D. Miss. March 29, 2010)(quoting *Martin K. Eby. Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To overcome such a motion, the plaintiff "must plead 'enough facts to state a claim for relief that is plausible on its face.'"  *Id.* (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The factual allegations must raise a right to relief that goes beyond speculation.  *Id.* (citing *Twombly*, 550 U.S. at 555).   If the well-pleaded facts only create an inference of the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief.  *Id.*

Under this framework, the district court must first identify those pleadings that are no more than conclusions, as these are not entitled to the assumption of truth.  *Id.* For those well-pleaded factual allegations, the court should assume they are true and then determine whether they create a plausible claim to relief.  *Id.*  Bare recitals of the elements of a cause of action supported only by conclusory statements need not be accepted as true and will not suffice to survive a motion to dismiss.  *Id.*

### b.   Overview of the Air Carrier Access Act

The Air Carrier Access Act ("ACAA") prohibits air carriers from discriminating against individuals on the basis of physical or mental impairment.  *See* 49 U.S.C. §41705.   The ACAA empowered the Department of Transportation ("DOT") to issue regulations "to ensure

nondiscriminatory treatment of qualified handicapped individuals consistent with safe carriage of all passengers on air carriers." *See* Pub. L. No. 99-435 § 3, 100 Stat. at 1080; *see also* 49 U.S.C. §41705(a). These regulations are contained in 14 C.F.R. Part 382.

      c.   Plaintiff's Claims For A Violation Of The ACAA Should Be Dismissed

Plaintiff's Second Amended Complaint is a renewed attempt to privately enforce her rights under the ACAA. The ACAA, however, does not create a private right of action, *and* it preempts any common-law causes of action premised upon a violation of its regulations. As explained in more detail below, Plaintiff claims that Defendants failed to comply with the standard of care created by the ACAA and federal regulations carrying out the ACAA. *See* D.E.37, ¶ 62. While Plaintiff alleges that she is alleging a "common law" negligence action, the well-settled precedent establishes that no private right of action exists under the ACAA. Plaintiff cannot avoid the preemptive effect of the ACAA by recasting her claims in common-law tort terms. Indeed, the Department of Transportation Order cited by Plaintiff in her Complaint D.E. 37 at ¶ 54(l), confirms that the remedy under the ACAA and 14 CFE 382.159(b) is to file a Complaint with the Department of Transportation. *See* Exhibit A to Motion to Dismiss Second Amended Complaint, Consent Order dated Jan. 11, 2017. Plaintiff's other common-law counts suffer from the same fatal defects as Plaintiff attempts to privately enforce her rights under the ACAA. In addition, Plaintiff's claims are subject to complete field preemption under the ACAA. For the reasons explained herein, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

      i.   The ACAA Does Not Create A Private Right Of Action

The ACAA does not create a private right of action, requiring the dismissal of any claims seeking a private remedy for a violation of this statute. *See Boswell v. Skywest Airlines, Inc.*, 361

F.3d 1263, 1264 (10th Cir. 2004). In *Boswell*, the plaintiff asserted a claim for a violation of the ACAA, among other claims, because the airline failed to supply her with oxygen for a flight. *Id.* Analyzing whether the ACAA allows private enforcement of its provisions, the Tenth Circuit applied the then-recent opinion of *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) in which the Supreme Court created a new test for determining whether a federal statute creates a private cause of action and held that one exists only when there is Congressional statutory intent to create a private right and remedy. *Boswell*, 361 F.3d at 1266 (citing *Alexander v. Sandoval*, 532 U.S. at 288). Ultimately, the Tenth Circuit found that Congress did not intend to create a private remedy because the ACAA provides for administrative enforcement through the DOT with an appeal to the circuit courts of appeal, suggesting that Congress intended to preclude other private methods of enforcement. *Id.*

Since *Sandoval*, numerous circuit and district courts have applied that test and reached the same result, finding no private right of action under the ACAA. *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 599 (2d Cir. 2011); *Love v. Delta Air Lines*, 310 F.3d 1347, 1356 (11th Cir. 2002); *O'Brien v. City of Phoenix*, No. CV-12-1334-PHX-FJM, 2012 WL 4762465 (D. Ariz. Oct. 5, 2012)("The ACAA does not expressly provide a private cause of action, and we conclude that no private right of action should be implied."); *Brown v. Alaska Air Group, Inc.*, No. CV-11-0091-WFN, 2011 WL 2746251 (E.D. Wash. July 14, 2011)("There is no private right of action under the ACAA, rather plaintiffs can file complaints with the Department of Transportation which may be appealed directly to the Federal Court of Appeals."); *Hill v. United Airlines, Inc.,* No. 2:10-cv-3243-RMG-BM, 2011 WL 1113499 (D.S.C. March 24, 2011)(dismissing the plaintiff's claim for a violation of the ACAA because "plaintiff is not entitled to a private right of action under the ACAA."); *Seymour v. Continental Airlines, Inc.*, No. 09-526-ML, 2010 WL

3894027 (D.R.I. June 11, 2010)(dismissing Count I of the Complaint alleging a violation of the ACAA because "the ACAA, like the Federal Aviation Act, does not expressly provide a right of action or a remedy for a private individual to sue an airline"); *Kerner v. Mendez*, No. C-08-04528, 2009 WL 1226998, *3 (N.D. Cal. May 1, 2009)("In the wake of *Sandoval*, this Court will not imply a private right of action. Accordingly, even if the Court construed Plaintiff's ADA claim as arising under the ACAA, that claim would fail for lack of a private right of action."); *Jackson v. United Airlines, Inc.*, No. 3:08CV182, 2009 WL 1036068 (E.D. Va. April 17, 2009)("Given the most recent case law governing implied rights of action, and the language and structure of the ACAA, this Court adopts the Tenth and Eleventh Circuits' analysis in finding that no private right of action exists under the [ACAA]."); *Perez-Ramos v. Spirit Airlines, Inc.*, No. 08-1576 (SEC), 2009 WL 890484 (D.P.R. March 25, 2009)(dismissing ACAA claim because it does not provide a private right of action); *Wright v. American Airlines, Inc.*, 249 F.R.D. 572 (E.D. Mo. March 3, 2008)(finding no private right of action under the ACAA); *Chipps v. Continental Airlines, Inc.*, No. Civ. A 3:05-CV-2024, 2006 WL 463160 (M.D. Penn. Feb. 24, 2006) (same); *Ruta v. Delta Airlines*, Inc., 322 F. Supp. 2d 391, 401-02 (S.D.N.Y. 2004)(internal citations omitted) ("Indeed, the regulations that implement the ACAA expressly provide that a passenger claiming she was refused transportation on the basis of her disability has two remedies: (1) make a complaint to the air carrier pursuant to its ACAA complaint resolution mechanism or (2) file a formal complaint with the Department of Transportation. Any attempt by Plaintiff to re-characterize her claim as being within the purview of ACAA thus fails.")

Most recently, the Fifth Circuit per curiam affirmed the dismissal of a Complaint which attempted to sue an airline for an alleged violation of a federal statute that did not expressly provide a cause of action. *Conservation Force v. Delta Air Lines, Inc.*, ___ Fed.Appx. ___, 2017

WL 1063458 at *2 (5th Cir. Mar. 20, 2017). In fact, the Fifth Circuit remarked that it was affirming the dismissal "for the reasons stated in the district court's comprehensive and well-reasoned opinion." *Id.* The district court in *Conservation Force* recognized that *Shinault* is no longer good law in light of *Sandoval* and declined to follow it. *See, e.g. Conservation Force v. Delta Air Lines, Inc.*, No. 3:15-CV-3348-M, 2016 WL 3166279, *8 (N.D. Tex. June 6, 2016). Discussing the Fifth Circuit's finding of an implied cause of action under the ACAA, the district court specifically noted that "*Shinault* predates *Sandoval*" and "every circuit court considering after *Sandoval* whether Congress implied a private right of action under the ACAA has concluded that no such right exists." *Id.* The district court further noted that the Fifth Circuit's analysis in *Shinault* was minimal when it concluded that a private right of action existed. *Id.* Further rejecting the analysis in *Shinault*, the district court stated:

> In short, decisions before *Sandoval* frequently implied private rights of action without rigorous analysis; they did so by making a somewhat cursory inspection of the statute and its legislative history. *Smith* and *Shinault* are exemplars of such decisions. More recent cases like *Lopez*, *Boswell*, and *Love*, engaged in a methodical analysis, finding no implied right. The Court concludes that *Smith* and *Shinault* are not binding nor persuasive on the matter here presented, and the Court is similarly unconvinced by the other non-binding authorities cited by Plaintiffs, because each such source relies on pre-*Sandoval* reasoning.

*Id.*

While *Conservation Force* did not precisely address the issue of whether a private right of action exists under the ACAA, the opinion does recognize that after *Sandoval*, a district court must engage "in a methodical analysis" to determine whether a private right of action exists in federal legislation. *Id.* All of the circuits which have considered the issue of whether a private right of action exists under the ACAA after *Sandoval* have concluded that the ACAA does <u>not</u> create a private right of action.

As further evidence that the ACAA does not provide for a private right of action, just last

month, Senator Tammy Baldwin introduced a bill in the Senate, which states that "[u]nlike other civil rights states, the ACAA does not contain a private right of action."  S. 1318, 115th Congress § 2(b)(6) (June 8, 2017, referred to S. Comm. on Commerce, Science, and Transportation).  Indeed, the proposed bill suggests amending the ACAA to provide any aggrieved person the right to bring a civil action in district court within a 2-year period of the violation.  S. 1318, 115th Congress § 4 (e) (June 8, 2017, referred to S. Comm. on Commerce, Science, and Transportation).  This further confirms in its present form the ACAA does <u>not</u> create a private right of action, but rather Congress must decide whether to create a private cause of action for ACAA violations.  *See e.g. Murphey v. Lanier*, 204 F.3d 911, 912 (9th Cir. 2000) (discussing the language that a statute uses to create a private right of action).

### 1. Count I Must Be Dismissed

In Count 1, Plaintiff purports to state a negligence claim against Defendants, claiming that they owed her a duty "to use reasonable care in confirming that Jake was a 'Service Animal.'"  *See* D.E. 37, ¶ 59. Plaintiff then claims that Defendants violated this non-existent common-law duty by failing to confirm that Jake was a service animal, thereby excluding him from the airport lobby and preventing Plaintiff from travelling home.  *Id.* at ¶ 60.  There is no common-law duty to allow passengers to travel with a service animal as Plaintiff contends, much less a common-law duty to confirm that an animal is indeed a "Service Animal."  Without such a common-law duty, Plaintiff's claims can only be premised upon a statutory duty – in this case, the ACAA.  Because the ACAA does not allow a private right of action, Plaintiff cannot use a violation of the ACAA to imply a legal duty that does not otherwise exist.  *See Njoku v. Northwest Airlines, Inc.*, 806 F. Supp. 2d 1022 (E.D. Mich. April 15, 2011)(finding that the ACAA does not create a private right of action and cannot, therefore, "create an affirmative duty

for wheelchair assistance, for which Northwest may be held liable under a negligence theory"). Absent precedent establishing that an airline has the affirmative common-law duty alleged in Count 1, as opposed to under the ACAA, Count 1 of the Second Amended Complaint fails.

## 2. Count 2 Must Be Dismissed

In Count 2, Plaintiff sues Defendants for negligent supervision of their employees. In doing so, Plaintiff first incorporates by reference all prior allegations and claims from the preceding 66 paragraphs. *See* D.E. 37 at ¶ 67. Specifically, in Count 2, Plaintiff alleged that "Defendants had a duty to supervise their agents, employees, and representatives to ensure they followed the duties and standards codified in the ACAA." *See* D.E. 37 at ¶ 70. This is simply another way to sue Defendants for an alleged ACAA violation. If Plaintiff cannot sue Defendants for their employees' alleged violation of the ACAA in the first instance, Plaintiff cannot build on that and sue Defendants for their alleged failure to supervise their employees and ensure they do not violate the ACAA. Plaintiff's inability to state a private right of action under the ACAA is, therefore, fatal to the claims in Count 2, requiring dismissal.

## 3. Count 3 Must Be Dismissed

Next, in Count 3, Plaintiff sued for negligent and/or intentional infliction of emotional distress. This is yet another attempt to sue for a purported violation of the ACAA. Although Count 3 does not specify the precise conduct that gave rise to this claim, Count 3 incorporates by reference all preceding 78 paragraphs and makes references to Plaintiff's status as a disabled person. *See* D.E. 73, ¶ 79. Given the foregoing, Plaintiff is again referencing the ACAA and Defendants' purported violation of it. Plaintiff cannot re-cast her claim for violations of the ACAA by labeling it under the common law. This is yet another attempt to privately enforce the ACAA under a different tort. Therefore, Count 3 must also be dismissed.

4. <u>Count 4 Must Be Dismissed</u>

Count 4 purports to state claims for breach of contract and the independent torts of bad faith and breach of the duty of good faith and fair dealing. Again, Plaintiff incorporates by reference all preceding allegations. *See* D.E. 37, ¶¶ 82, 88, 92. Count 4 then alleges that Defendants' alleged violation of the contract of carriage was so egregious that it rose "to the level of an independent tort." *Id.* at ¶ 87. Plaintiff describes the alleged "independent tort" as a "negligent, grossly negligent and/or reckless *refusal to allow Ms. McCombs and her Service Animal to travel home on the flight* for which she was ticketed and had a boarding pass on October 25, 2015," along with conduct that "negligently, gross negligently and/or recklessly delayed Ms. McCombs' travel for an unreasonable amount of time," and that "acted in conscious, gross and/or reckless disregard for the rights of Ms. McCombs, *as described with particularity throughout the Complaint*." *Id.* at ¶88 (emphasis added).

Count 4 is in reality another attempt to enforce the ACAA. The purported "refusal to allow Ms. McCombs and her Service Animal to travel home on the ticketed flight" described in paragraph 88(a) is claim for an ACAA violation. Were it not for the ACAA, Defendants would not be obligated to allow Plaintiff to travel with a service animal. No such common-law duty exists. The duty is statutory in nature, arising solely under the ACAA. Thus, the alleged tortious conduct described in paragraph 88(a) simply repeats the same claims under a new heading.

Similarly, the purported disregard for Plaintiff's rights "*as described with particularity throughout the Complaint*" alleged in paragraph 88(c) is yet another reference to Defendants' alleged violations of the ACAA. As discussed above, the Second Amended Complaint is replete with references to alleged ACAA violations, which is exactly what paragraph 88(c) references. Seeing as the ACAA does not afford Plaintiff a private right of action for a violation of its

provisions, Count 4 must also be dismissed.

### 5. Count 5 Must Be Dismissed

With regard to Count 5, asserting claims for fraud, fraudulent inducement, and fraudulent misrepresentation, this is yet another attempt to sue Defendants for an ACAA violation. In paragraph 93, Plaintiff incorporates all preceding allegations by reference, thereby incorporating all purported ACAA violations. *See* D.E. 37, ¶ 93. Thereafter, Plaintiff alleges that Defendants represented on their website that they allowed passengers to travel with service animals provided the passenger supplies certain specified information. *Id.* at ¶ 94. Plaintiff uses this representation to assert a claim of fraud against Defendants, alleging that Defendants "*did not intend to permit Plaintiff to travel with their Service Animals* upon presentation of only the information set forth on Defendants' web site." *Id.* at ¶ 95 (emphasis added). The gravamen of this claim goes back to Defendants' purported refusal to allow her to fly with her service animal. Air carriers, such as Defendants, only have a duty to allow travel with a service animal under the ACAA. No such common-law duty exists. Once again, Plaintiff is using the very same alleged ACAA violation and re-casting it as another tort in an attempt to create a private right of action that does not exist.

### 6. Count 7 Must Be Dismissed

In Count 7, Plaintiff purports to state a claim for "Pattern and Practice / Systematic Reckless Disregard and Failure to Train." Much like the other counts, Plaintiff realleges all preceding allegations, which at this point includes all preceding 103 paragraphs. *See* D.E. 37, ¶104. Count 7 then alleges that the "acts and omissions" of Defendants and their employees "*spelled out in the preceding paragraphs* do not represent an isolated instance, but represent a pattern and practice of *mistreating disabled persons and their Service Animals and/or Emotional*

*Support Animals* throughout the United States." *Id.* at ¶105 (emphasis added). This is a blatant effort to use the ACAA to make widespread allegations that Defendants engaged in a routine pattern and practice of violating the ACAA. The duty to not discriminate against disabled individuals in air travel arises solely from the ACAA; thus, any claim that Defendants were discriminating against passengers with disabilities is an attempt to privately enforce the ACAA on a wider scale, requiring dismissal of this Count.

### 7. Counts 8 and 9 Must Be Dismissed

Counts 8 and 9 do not state independent torts against Defendants. Instead, Count 8 advances a respondeat superior theory alleging that Defendants are responsible for the actions of their agents or employees while Count 9 alleges that both air carriers were engaged in a joint venture/partnership/co-principal relationship and are, therefore, vicariously liable for the acts of the other. These counts are dependent upon the claims advanced in Counts 1 through 5 and Count 7 as they do not raise new theories of liability but simply seek to hold Defendants vicariously liable for the ACAA violations described above. Because Plaintiff cannot maintain claims in Counts 1 through 5 and Count 7, Plaintiff likewise cannot state a claim in Counts 8 and 9 as these are dependent upon viable underlying theories of liability. Thus, these counts must also be dismissed.

### ii. The ACAA Preempts Plaintiff's State-Law Clams

Not only does the ACAA not create a private right of action, but it also preempts any state laws premised upon purported violations of the ACAA. *See Compass Airlines LLC v. Montana Dept. of Labor & Industry*, 2013 WL 4401045 (D. Mont. Aug. 12, 2013). In *Compass Airlines*, the district court was asked to determine whether the ACAA preempted the plaintiff's state-law claims presented to the Montana Department of Labor and Industry. The plaintiff, who

had a form of muscular dystrophy requiring travel with a portable ventilator and wheelchair, attempted to board his flight, but a flight attendant denied him boarding because she mistakenly believed he was travelling with a portable oxygen concentrator, which requires a medical certificate. *Id.* The regulations did not require a medical certificate for his device. *Id.* Eventually the airline's complaint resolution officer sent Plaintiff a "ten-day letter" admitting that the carrier violated the ACAA. *Id.* The plaintiff filed a charge of discrimination with the Montana Human Rights Bureau for claims of emotional distress resulting from the airline's purported discriminatory, hostile environment, so the airline sought a declaratory judgment to determine whether the ACAA preempted the discrimination claims filed under Montana law. *Id.*

Analyzing the issue, the district court first determined that the purpose of the Part 382 regulations was to prevent discrimination against handicapped individuals *and* to ensure safety. *Id.* A finding that Part 382 regulations were not related to safety concerns would be "an inaccurate assessment of the purpose of the regulations, many of which place significant limitations on the rights of passengers with disabilities for the express purpose of maintaining safe operation of aircraft and safe air travel for all passengers." *Id.* Because the claim at issue implicated an area pervasively regulated by the DOT, this area of state law was subject to field preemption as it concerned a matter of air transportation safety. *Id.* This preemption finding, in turn, precluded state-law claims for a violation of the ACAA regulations. *Id.*

Other courts have similarly found complete field preemption of state-law claims premised upon a violation of the ACAA, dismissing such claims. *See Foley v. Jetblue Airways Corp.*, No. C 10-3882 JCS, 2011 WL 3359730 (N.D. Cal. Aug. 3, 2011)(dismissing state-law claims and holding that the ACAA preempts causes of action based on California law where the plaintiff alleged the airline operated its website and its kiosks in such a way that they were not

accessible to the visually impaired); *Brown*, 2011 WL 2746251 at *5 (finding that claims under Washington's Unfair Practices in Public Accommodation law were subject to field preemption when the plaintiff's complaint alleged the airline violated state law by failing to provide wheelchair transport services); *Johnson v. Northwest Airlines, Inc*., No. C 08-02272 VRW, 2010 WL 5564629 (N.D. Cal. May 5, 2010)(finding that regulations implementing the ACAA implicated both safety and anti-discrimination mandates and provided specific requirements for assisting disabled passengers during deplaning, which evidenced Congress' intent to preempt state law in this area, thereby dismissing the plaintiff's negligence claim for failure to provide wheelchair services).

In this case, much like the *Compass Airlines* case, Plaintiff's emotional distress claims are directly tied to purported violations of the ACAA. Indeed, her Second Amended Complaint is premised upon a violation of the ACAA's implementing regulations pertaining to travel with a "Service Animal." Part 382.27(c) of the Code of Federal Regulations contains regulations pertaining to individuals travelling with a service or emotional support animal along with requirements for providing advance notice. Part 382.117 also contains detailed provisions regarding an individual's travel with a service animal or an emotional support animal, including the requirements for acceptable documentation that must be provided to the airline. These regulations are intended to prevent discrimination *and* ensure passenger safety as certain service animals may be "too large or too heavy to be accommodated in the cabin" or may "pose a direct threat to the health or safety of others." *See* 14 C.F.R. 382.117(f). As a result, the DOT has promulgated detailed ACAA regulations involving travel with service animals.

The allegations in Plaintiff's Second Amended Complaint are centered on Defendants' purported failure to follow these specific ACAA regulations involving travel with a service

animal.  Given that Congress and the DOT have extensively regulated this area of law, Plaintiff's

state-law claims pled in Counts 1 through 5 and Counts 7 through 9 are subject to complete field

preemption and must be dismissed.[1]

        d.   <ins>Plaintiff Cannot State A Claim Against Defendants Under the Americans with
Disabilities Act, Requiring The Dismissal of Count 6</ins>

Separate from the preemption arguments raised above, Defendants move to dismiss

Plaintiff's claim under the Americans with Disabilities Act ("ADA") found in Count 6 of the

Second Amended Complaint.  In this Count, Plaintiff alternatively pleads claims under Title II

and Title III of the ADA; however, Plaintiff cannot state either claim against an air carrier.  Title

II does not apply to private entities, such as Defendants, and Title III does not apply to airlines

and air travel.  Therefore, count 6 of the Second Amended Complaint must be dismissed.

Under Title III of the ADA, the law is well settled that this law does not apply to a private

airline or at an airport terminal.  *Lopez v. Jet Blue Airways*, 662 F.3d 593, 599 (2d Cir. 2011).  In

*Lopez*, the plaintiff filed a *pro se* complaint pursuant to Title III of the ADA.  First analyzing

whether the plaintiff could maintain a claim for disability discrimination in the provision of

"specified public transportation services," the court noted the statute defines this phrase as

"transportation by bus, rail, or any other conveyance (*other than by aircraft*) that provides the

general public with general or special service (including charter service) on a regular and

continuing basis." *Id.* (quoting 42 U.S.C. § 12181(10) (emphasis added)).  Finding that air

carriers cannot be liable under the ADA for disability discrimination in the provision of services

related to air transportation, the court dismissed this claim.  Turning to the ADA claim for

discrimination in a "place of public accommodation," the court found that a "[t]erminal, depot, or

---

[1] Defendants have separately moved to dismiss Plaintiff's claim for a violation of the Americans
with Disabilities Act found in Count 6 for the reasons explained below.

other station" used primarily to facilitate air transportation was not considered a "public accommodation" for purposes of Title III of the ADA, thereby dismissing the claim. *Id.*

Many other courts have analyzed whether a passenger can sue an airline under Title III of the ADA for discrimination in a place of public accommodation or for discrimination in the provision of a specified public transportation, reaching the same result. *See Segalman v. Southwest Airlines*, 913 F. Supp. 2d 941 (E.D. Cal. 2012)(reversed on other grounds)("[B]ecause aircraft is not 'specific [sic] public transportation' as defined under the ADA, and the airport terminal is not a place of public accommodation for ADA purposes, Plaintiff's ADA claim must be dismissed for failure to state a claim upon which relief may be granted."); *Seymour v. Continental Airlines, Inc*., No. 09-526-ML, 2010 WL 3894027 (D.R.I. June 11, 2010)(dismissing claim under the ADA because aircraft are expressly excluded from the list of transportation systems covered by the statute, finding that courts have consistently excluded claims against airlines from the reach of the ADA); *Kerner v. Mendez*, No. C-08-04528, 2009 WL 1226998, at *3 (N.D. Cal. May 1, 2009)(dismissing claim under the ADA because an aircraft operator is not subject to Title III of the ADA and "specified public transportation" does not include airlines).

As to Plaintiff's newly raised allegations that Defendants should be held liable under the theory that "travel services" referenced in 28 C.F.R. 36.104 and 42 U.S.C. § 12182 apply to Defendants through the AA.com website, this argument also summarily fails. For example in *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir.2004), the Eleventh Circuit, when considering the issue as to whether an airlines website is a place of public accommodation recognized that "airlines such as Southwest are largely not even covered by Title III of the ADA." In *Access Now*, the Eleventh Circuit recognized that airlines "are covered by another disability-access statute, the pre-ADA Air Carriers Access Act." *Id.* Moreover, the caselaw

from the Fifth Circuit is clear that Title III's definition of "public accommodation" is limited to "actual, physical places." *Magee v. Coca–Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 & 534 n.23 (5th Cir. 2016). The majority of circuits agree that places of public accommodation are "actual, physical places." *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–14 (6th Cir. 1997); *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 612–14 (3d Cir. 1998). Indeed, when those courts have analyzed the precise provision of 42 U.S.C. § 12181 relied upon by Plaintiff in her Second Amended Complaint, they have found that Congress intended to refer to a physical place. *See Ford*, 145 F.3d at 612–13; id. at 614 ("The litany of terms [in § 12181(7) ], including 'auditorium,' 'bakery,' 'laundromat,' 'museum,' 'park,' 'nursery,' 'food bank,' and 'gymnasium[ ]' refer to places with resources utilized by physical access."); *Weyer*, 198 F.3d at 1114 ("All of the items on [§ 12181(7)'s list of public accommodations] ... are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services."). When read in conjunction with the remaining language of the statute exempting air terminals and aircrafts, it is clear that the language referred to in the statute as "travel services" was actual a physical, travel agency—not a website or Defendants operating an airline in an airport terminal. Similarly, Defendants' check-in kiosks do not qualify as a place offering travel services, just as a vending machine does not qualify as a "sales establishment." *Magee*, 833 F.3d at 535-536; *see also* Department of Justice, Americans with Disabilities Act Title III Covering Public Accommodations and Commercial Facilities, § III–1.2000, available at https://www.ada.gov/taman3.html (illustrating that a physical travel agency located in a building is a public accommodation covered by title III).

Similarly, claims under Title II of the ADA do not apply to Defendants here because Title

II "does not cover air travel;" therefore, any claims based on an airline's refusal to carry a passenger are not actionable. *Ruta v. Delta Airlines*, Inc., 322 F. Supp. 2d 391, 401-02 (S.D.N.Y. 2004); *see also Hill v. United Airlines, Inc.,* No. 2:10-cv-3243-RMG-BM, 2011 WL 1113499 (D.S.C. March 24, 2011)(finding that Title II "does not apply to private entities," precluding a lawsuit against an airline); *Perez-Ramos v. Spirit Airlines, Inc.*, No. 08-1576 (SEC), 2009 WL 890484 (D.P.R. March 25, 2009)(finding that "the ADA does not apply to air travel").

In light of the foregoing, it is evident that Plaintiff cannot state a claim under either Title II or Title III the ADA as a matter of law. Thus, this count should be dismissed.

e. <u>To The Extent Count 4 Is Not Preempted, Plaintiff's Claim For Punitive Damages Pled Therein Should Be Dismissed Under Kansas Law</u>

Alternatively, in the event this Court does not find Count 4 preempted under the ACAA, Plaintiff's punitive damage claim pled therein should be dismissed under Kansas law. Similarly, Plaintiff's punitive damage claim pled in paragraph 121, which is based on the allegations of Count 4, should also be dismissed under Kansas law.

i. <u>Choice Of Law</u>

To determine whether Mississippi or Kansas law should apply to this issue, it is necessary to undergo a choice-of-law analysis. A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941); *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010). In accordance with *Klaxon Co.*, this court should apply Mississippi's choice-of-law rules.

In Mississippi, a choice-of-law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation. *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006). In this case, both Kansas and Mississippi have an interest in applying its laws as the incident occurred in Kansas, but Plaintiff claims to have entered into the

contract with Defendants in Mississippi.  As explained below, there is a conflict as to the application of punitive damages in an action for breach of contract, requiring a choice-of-law analysis here.

Once it is determined that a conflict of law exists, Mississippi's choice-of-law rules require a three-part inquiry: "(1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws." *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225–26 (5th Cir. 2010).  The Mississippi Supreme Court has labeled "rules of evidence and procedure, statutes of limitations, and awards of attorney's fees and interest" as procedural for choice-of-law purposes.  *Hartford Underwriters Ins. Co. v. Found Health Servs. Inc.*, 524 F.3d 588, 593 (5th Cir. 2008).  When the issue involves whether a plaintiff can maintain a cause of action, it is classified as substantive.  *Id.*  Here, the issue of whether Plaintiff can maintain a claim for punitive damages is substantive in nature.

Next, the issue must be classified as tort, property, or contract.  Given that punitive damages can only be awarded for conduct that rises to the level of an intentional tort, this issue is governed by the "significant relationship" test found in the Restatement (Second) of Conflict of Laws (1971). *See, e.g., Mitchell v. Craft*, 211 So. 2d 509, 514 (Miss. 1968) (quotation marks omitted). The "significant relationship" test considers the following contacts: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered."  *See* Restatement (Second) of Conflict of Laws § 145 (1971).

The last step of the test is to evaluate the following policy considerations from section 6

of the Restatement: "(a) The needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relevant interests of those states in the determination of a particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of results; and (g) ease and determination in application of the law to be applied." *See* Restatement (Second) of Conflict of Laws § 145, comment b.

1. Mississippi Law

Under the Mississippi punitive damages statute, a plaintiff is required to prove by clear and convincing evidence that the defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code § 11-1-65(1). Mississippi law allows an award of punitive damages for a breach of contract as long as the plaintiff proves "the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights." *T.C.B. Construc. Co. v. W.C. Fore Trucking, Inc.*, 134 So. 3d 701 (Miss. 2013)(quoting *Pursue Energy Corp. v. Abernathy*, 77 So. 3d 1094, 1101 (Miss. 2011)). In *T.C.B. Construc. Co.*, the Mississippi Supreme Court found sufficient evidence to warrant punitive damages in a breach of contract case when the defendant admitted to receiving the Plaintiff's invoices, thereby receiving the benefit of the plaintiff's work without fully compensating the plaintiff for those services. *Id.*

In Count 4, Plaintiff alleges that Defendants' alleged breach of contract was so egregious that it rose to the level of an independent tort when they refused to allow Plaintiff and her service animal to fly home, delayed her travel for an unreasonable amount of time, and acted in conscious, gross and/or reckless disregard for her rights. *See* D.E. 37, ¶ 87. In contrast to Kansas law discussed below, Mississippi law appears to allow a claim for punitive damages

20

under this theory of liability, if proven.

### 2. Kansas Law

In comparison, Kansas's punitive damage statute provides: "In any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. § 60-3702 (2016). Under Kansas law, "damages for breach of contract are limited to pecuniary losses sustained and exemplary or punitive damages are **not** recoverable in the absence of an independent tort." *Guarantee Abstract & Title Co., v. Interstate Fire & Cas. Co.,* 232 Kan. 76, 78 (Kan. 1982)(emphasis added)(citing *Temmen v. Kent-Brown Chev. Co.*, 227 Kan. 45, 605 P.2d 95 (1980)). The exception **only** applies "when some independent tort or wrong results *in additional injury* which justifies the assessment of punitive damages by way of punishment of the wrongdoer." *Id.* (emphasis added); *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F. 2d 141 (10th Cir. 1988)("The requirement of additional injury also has been imposed by federal courts applying Kansas law.").

In order to pursue punitive damages, the independent tort must be based on a violation of a duty imposed by law, not on a duty imposed by contract. *Guarantee Abstract & Title Co.,* 232 Kan. at 78-79. *Id.* at 79 (noting that the tort of bad faith is not recognized in Kansas). When all damages flow from the breach of the contract, there cannot be an independent tort and there cannot be a right to punitive damages. *Id.* Further, a claim that one acted negligently in performing the duties under the contract does not create a tort action or alter the measure of damages which may be recovered. *Id.* at 81; *see also Pizza Mgmt., Inc. v. Pizza Hut*, 737 F. Supp. 1154 (D. Kan. 1990)(quoting *Cornwell v. Jespersen,* 238 Kan. 110, 120 (Kan.

1985)("breach of a contract, standing alone, does not call for punitive damages even if the breach is intentional and unjustified").

In this case, there is nothing in Count 4 suggesting an independent tort beyond a breach of the contract. There is no "additional injury" alleged as a result of the breach of the contract or some violation of a duty imposed by law beyond the obligations of the contract of carriage. Unlike Mississippi law, Kansas does not allow punitive damages simply because a party intentionally and unjustifiably breached a contract, which is what Plaintiff alleges in the Second Amended Complaint. Under Kansas law, a party can intentionally breach a contract and be subject only to pecuniary losses without fear of punitive damages. Further, negligence, gross negligence or recklessness *with regard to the performance of contractual obligations*, as alleged in Count 4, does not rise to the level of conduct necessary to impose punitive damages under Kansas law. As a result, Kansas law requires the dismissal of Plaintiff's punitive damage claims pled in Count 4 and in paragraph 119 of the Second Amended Complaint, the latter of which is premised upon the conduct alleged in Count 4.

ii. Application of Choice-Of-Law Factors

Due to the conflict between Mississippi and Kansas law on the issue of punitive damages, it is necessary to undertake a choice-of-law analysis. Based on Kansas's overwhelming contacts with this litigation, it has the more significant relationship, requiring the application of its laws and the dismissal of punitive damages in Count 4 and paragraph 119.

1. Place Where The Injury Occurred

Here, Plaintiff's Second Amended Complaint makes clear that she was injured in the state of Kansas. Plaintiff's allegations are almost entirely centered upon actions that took place within the Manhattan Regional Airport. The Second Amended Complaint admits this. *See* D.E.

37 at ¶100 ("As set forth above, all of the acts and omissions of the Defendants on October 25 and 26, 2015 took place within the public lobby of the Manhattan Regional Airport"). Despite amending her Complaint twice—this allegation remains unchanged. *Compare* D.E. 1 at ¶100, D.E. 3 at ¶101 and D.E. 37 at ¶100. The alleged improper denial of boarding leading to the breach of contract claim as well as the alleged verbal assaults, discrimination, harassment and resulting humiliation all took place in the airport lobby in Kansas. D.E. 37 at ¶¶ 16-33, 34-38. Plaintiff's onset of panic, anxiety and aggravation of her PTSD all took place while she was in the airport lobby. *Id.* at ¶¶ 22, 25. Plaintiff's alleged loss of wages along with her damages for lodging and incidental travel expenses were also incurred in Kansas. *Id.* at ¶120(c), (h). Thus, Plaintiff's injuries occurred within the state of Kansas, giving Kansas a significant interest in the application of its laws to this issue.

2. <u>Place Where The Conduct Causing The Injury Occurred</u>

As noted above, the Second Amended Complaint admits that "all of the acts and omissions of the Defendants on October 25 and 26, 2015 took place within the public lobby of the Manhattan Regional Airport." *See* D.E. 37 at ¶ 100. It is undisputed that the vast majority of the alleged "conduct" occurred in Kansas. *Id*. at ¶¶ 16-33, 34-38, 43. The only conduct that occurred outside of Kansas was the alleged incident at the Dallas-Fort Worth Airport, where McCombs was allegedly "embarrassed, humiliated, and mortified" by Defendants' agents greeting and escorting her. *Id*. at ¶¶ 44-47. Significantly, <u>none</u> of the allegedly injurious conduct took place within the state of Mississippi.

Here, Kansas has a greater interest in determining the rights and responsibilities of each party as the allegations of negligent, grossly negligent and intentional conduct occurred within its territory. The alleged tortious conduct did not involve Mississippi at all. Therefore, this factor

heavily favors the application of Kansas law.

### 3. Domicile, Residence, Nationality, Place Of Incorporation, Place of Business Of The Parties

An analysis of the third factor does not reveal a more significant relationship between one forum versus the other. While Plaintiff was once domiciled in Mississippi,[2] *id.* at ¶ 1, Defendants operate out of and have a physical presence at the Manhattan Regional Airport in Kansas. Both Defendants are incorporated in Delaware and have their primary place of business in Texas. *Id.* at ¶¶ 2, 3. While initially this factor did not support the application of Mississippi or Kansas law, now that Plaintiff is no longer a resident of Mississippi, Kansas has a greater interest in allocating liability to corporations operating within its territory, Mississippi has a similar interest in protecting its residents from the allegedly tortious conduct of another. Therefore, this factor is neutral.

### 4. Place Where The Relationship, If Any, Between The Parties Is Centered

This factor considers "the place where the relationship, if any, between the parties is centered." The only relationship between Plaintiff and Defendants is a contractual one. Although Plaintiff may have purchased her ticket in Mississippi, Defendants' performance of the contractual obligations at issue was set to take place within the state of Kansas. As a result, this factor does not weigh in favor of either Kansas or Mississippi law.

### iii. Policy Factors

Applying the first policy factor of section 6 of the Restatement, comment d states that the

---

[2] Plaintiff's Complaint does not allege the current place of residence of Plaintiff. Plaintiff alleges that she "was an adult resident citizen of Harrison County, Mississippi at the time this cause of action was initiated, filed and served." D.E. 37 at ¶ 1. As previously addressed in prior pleadings before this Court, Defendants believe Plaintiff moved to Italy after the filing of this Complaint.

outcome of conflict-of-law analysis should "further harmonious relations between states and . . . facilitate commercial intercourse between them." *See* Restatement (Second) of Conflicts § 6 cmt. d. In order to preserve the harmonious relations between Kansas and Mississippi, the court should apply Kansas law when the causes of action at issue, such as the ones here, stem from actions that took place within Kansas's borders.

As to the second and third policy factors, these factors are neutral between the two jurisdictions. Kansas has an interest in imposing responsibility upon a corporation doing business within its borders and conducting business in its airport. Kansas also has an interest in protecting its citizens and visitors alike from allegedly tortious conduct.

The "significant relationship" test leads to the application of Kansas law. The place of injury and the allegedly injurious conduct, which carry the most weight in this analysis, took place within Kansas. None of the injuries or the allegedly tortious conduct occurred in Mississippi. The only pertinent contact with Mississippi is Plaintiff's allegation that she purchased her ticket in Mississippi. The remaining choice-of-law factors are neutral, thereby requiring the application of Kansas law to the issue of punitive damages. Kansas law does not allow Plaintiff to maintain a claim for punitive damages arising from an alleged breach of contract. For that reason, Plaintiff's claim for punitive damages in Count 4 and paragraph 121 should be dismissed.

WHEREFORE, for the reasons explained above, Defendants American Airlines, Inc., Envoy Air, Inc., John Doe and Jane Doe respectfully request the dismissal of all claims pled within the Second Amended Complaint with prejudice and any other relief this Court deems proper.

Respectfully submitted,

/s/ *Gregory M. Palmer*
_____

GREGORY M. PALMER - PHV
Florida Bar No.: 0784796
E-mail: gpalmer@rumberger.com
VICTORIA SAN PEDRO MADANI- PHV
Florida Bar No.: 111747
E-mail: vmadani@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
A Professional Association
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130-3037
Tel: 305.358.5577
Fax: 305.371.7580
*Attorneys for Defendants*

/s/ *Meta C. Danzey*_____
Meta C. Danzey, Esq.
Mississippi Bar No. 103251
E-mail: meta.danzey@butlersnow.com
BUTLER SNOW LLP
1300 25th Avenue,
Suite 204
Gulfport, MS 39501
Tel: (228) 575-3031
Fax: (228) 868-1531
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 2, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Christopher C. Van Cleave, Esq.
Clyde H. Gunn, III, Esq.
David N. Harris, Jr., Esq.
CORBAN GUNN & VAN CLEAVE, PLLC
P. O. Drawer 1916
Biloxi, MS 39533-1916
buddy@cgvclaw.com
christopher@cgvclaw.com
david@cgvclaw.com

*/s/ Meta C. Danzey*
Meta C. Danzey, Esq.

37594716v1